UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:22-cr-10016-5-FDS |
| | ) | |
| | ) | |
| DANE MITCHELL | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

## I.     Introduction

Dane Mitchell has accepted responsibility for his actions by pleading guilty and entering into a plea agreement with the government. Under that agreement, the parties will jointly recommend that the Court sentence him to 84 months of incarceration followed by three years of supervised release. Dkt. 180, Plea Agreement, Section 4. The agreed recommendation is slightly below the advisory sentencing range of 100-125 months but is more than three times longer than the longest sentence Mr. Mitchell has previously served. PSR ¶ 46. Such a significant increase will serve the statutory sentencing goals of sentencing under 18 U.S.C. § 3553(a), including deterrence, just punishment, and protection of the public. For the reasons argued below, a sentence of 84 months incarceration and three years of supervised, in this particular case for this particular defendant, is one "that is *minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

## II. The probation department has correctly calculated the advisory sentencing range.

Mr. Mitchell agrees that the probation department has correctly calculated the advisory sentencing range. The offense level is driven by the conviction for Felon in Possession of a Firearm (Count Eight) because it results in a higher level than the conviction for Possession with Intent to Distribute Cocaine (Count Nine). Mr. Mitchell receives a base offense level of 20 based on a prior drug conviction, PSR ¶¶ 26, 45, plus two enhancements: 1) four points because the firearm had an obliterated serial number and 2) four points because the firearm was possessed in connection with another felony offense (the drug count). Three points are subtracted for acceptance of responsibility, resulting in a Total Offense Level of 25. PSR ¶¶ 26-36. The two counts are grouped together because the drug count is the basis for a specific offense characteristic in the firearm count. PSR ¶ 24; USSG ¶ 3D1.2(c).

In the plea agreement the government took the position that Mr. Mitchell should also receive a two-point enhancement because the offense allegedly involved between three and seven firearms. Dkt. 180, Plea Agreement, Section 3. However, the probation department found that there is insufficient evidence that Mr. Mitchell possessed more than two firearms. PSR ¶ 26a. The probation department is correct because the allegations of possession of any other firearms are based on suspicion and speculation only.

Mr. Mitchell agrees that he receives 11 criminal history points as calculated in the presentence report, which places him in Criminal History Category V. PSR ¶¶ 38-49. Offense level 25 in Category V yields an advisory range of 100-125 months. PSR ¶ 107.

**III.     The sentencing factors of § 3553(a) support a sentence of 84 months.**

Under 18 U.S.C. § 3553(a), the Court is required to consider a wide range of factors with the ultimate goal of imposing a sentence that is "sufficient, but not greater than necessary." The First Circuit has stated that this mandate means that the Court must impose a sentence "that is *minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added). The sentencing factors in this case show that a sentence of 84 months, or seven years, is minimally sufficient.

Dane Mitchell is 32 years old. PSR p. 3. He was arrested on December 28, 2021, PSR ¶ 1. He was 30 years old at the time and has been in custody ever since. Should the Court impose the jointly recommended 84-month sentence, he will be at least 36 when he is released, having lost more than the first half of his 30s as a consequence for his actions.

An 84-month sentence is also a significant increase over any prior sentence Mr. Mitchell has ever received. The longest prior sentence was 27 months for possessing a firearm at a firing range after having been convicted of a felony. PSR ¶ 46. The jointly recommended sentence in this case is more than three times as long. Although it is clear that Mr. Mitchell committed a serious offense, it also is clear that he has agreed to a serious sentence. He has accepted a deprivation of liberty much longer than any he has previously suffered, which is an acknowledgment of the severity of the offense. He also has agreed that he should be subject to three years of supervised release after the conclusion of the incarceration portion of the sentence. Thus, all told, Mr. Mitchell will spend nearly the entirety of his 30s directly paying the consequences for his actions in this matter. This amount of court control over him for this length time will satisfy the sentencing goals of deterrence, just punishment, and protection of the public.

The degree of increase over any prior sentence is one factor that supports the modest downward variance being recommended by the parties. Mr. Mitchell's upbringing provides another. Because his father suffered a disabling injury while Mr. Mitchell was young, his mother was left as the sole provider for three children. PSR ¶ 71. This meant that she worked very long hours and was rarely home, leaving Mr. Mitchell often home alone as a child. Id. Mr. Mitchell's parents separated when he was approximately seven. Id. Although Mr. Mitchell spent some time with his father, his father's strict, religious home led to significant conflict between the two. Id. The result of these factors was that Mr. Mitchell spent a great deal of time unsupervised out of the house beginning at a young age. Id.

Unfortunately, being out of the house was not a safe place for young Dane Mitchell. Because his family struggled financially, they lived in poor neighborhoods that were plagued by crime, drugs, and violence. PSR ¶ 72. It is clear that Mr. Mitchell was shaped by socioeconomic forces around him. His mother recognized that his peer group was not prosocial or positive. PSR ¶ 73. She watched as his negative behavior increased over time. Id. Her observations are born out by the evidence of court involvement beginning at just 13 years old, with his first conviction at 19. PSR ¶¶ 39, 53.

Unfortunately, Mr. Mitchell has not yet found a way out of the behavioral patterns he learned as a child. He recognizes that, and is thus prepared to accept a significant consequence, one far beyond any he has received before. Yet there is evidence that as he ages and continues to suffer increased consequences that he is now beginning to make changes.

While detained, he has not committed any disciplinary violations. PSR ¶ 6. He also has completed five separate rehabilitation programs: Career Readiness, Science and Technology,

4

Money and Investing, Peace from Within, and Behind the Walls: Crime and Justice Inside-Out Prison Exchange Program. Exhibit A, Certificates of Completion. Although opportunities for rehabilitation are generally limited while in pretrial detention, Mr. Mitchell has taken advantage of the opportunities presented to him during the last two years.

Mr. Mitchell has already shown that he has some of the necessary abilities to be a productive member of society. He maintained steady employment as a personal care assistant for his father for two-and-a-half years prior to his arrest in this case. PSR ¶ 98. He also is loved by his family and friends, who will form a support network to assist him with his transition back to society after he completes his sentence. His mother and a good friend have written letters of support for him. Exhibit B, Letters of Support. Both describe him as caring and generous towards others. Id. With a support network, the ability to maintain employment, and a commitment to learning new skills through programming, Dane Mitchell has the potential to finally make the necessary changes.

### IV. The Court should impose appropriate conditions of supervised release that are reasonably related to the goals of supervision.

The probation department has proposed six special conditions of supervised release. PSR p.31. Although not required to by the plea agreement, Mr. Mitchell agrees with the first and most important one- that he not knowingly communicate or interact with members and associates of the Ashmont Street Gang. Mr. Mitchell recognizes that changing his behavior will require changing his associations.

Mr. Mitchell does object to two of the proposed special conditions- number 2, that he participate in a substance abuse treatment program, and number 4, that he be subject to a curfew and electronic monitoring during the first six months of supervised release. As to the treatment condition, while Mr. Mitchell acknowledges that he has used alcohol and controlled substances in the past, there is no indication that he ever suffered an addiction which requires treatment. The primary drug he has used throughout his life is marijuana. PSR ¶ 91. Mr. Mitchell is aware that he will be prohibited from using marijuana while on supervised release, but that treatment for marijuana use is not likely to provide any notable benefit. Mr. Mitchell also acknowledges that he used fentanyl for pain management in the first few months after he was shot. However, after an 84-month prison sentence without fentanyl, the likelihood of further fentanyl use will be minimal. Mr. Mitchell does not object to drug testing to ensure his compliance but maintains that there is no indication that he suffers from an addiction that would benefit from treatment.

As to the curfew, Mr. Mitchell submits that his offenses were not ones that were connected to the nighttime. They were choices for which he has agreed to serious consequences. When he is released in six to seven years, the already thin justification for a curfew will be non-existent. Given his age and the facts of the case, a six-month curfew is not justified.

V. **The Court should not forfeit any of Mr. Mitchell's property apart from the already forfeited firearm because there is no authority do so on the facts of this case.**

In the plea agreement, the government indicated that it would seek to forfeit the gun seized in this case jewelry seized from Mr. Mitchell at arrest. Dkt. 180, Plea Agreement, Section 5. Mr. Mitchell agreed in the plea agreement that the firearm in this case should be forfeited and the

government has already administratively forfeited it. Dkt. 193, Notice Regarding Forfeiture. However, the jewelry cannot be forfeited because the statutory requirements have not been met.

The indictment included a general Drug Forfeiture Allegation under 21 U.S.C. § 853. Under the statute, property can be forfeited only if it is shown to be proceeds of the offense or used in the commission of the offense. 21 U.S.C. § 853(a)(1), (2).[1] For both the proceeds nexus and the use nexus, the statute requires that the property be sufficiently connected to "such violation," meaning the offense of conviction. See *United States v. Rogers*, 102 F. 3d 641, 648 (1st Cir. 1996) (interpreting "such violation" as "the violation for which the defendant was convicted."); *United States v. Juluke*, 426 F.3d 323, 327-328 (5th Cir. 2005). The government bears the burden of proving the forfeiture elements have been met by a preponderance of the evidence. *Rogers*, supra at 647-648.

The drug offense of conviction in this case is Possession with Intent to Distribute Cocaine. Because the offense was possession combined with future intent, rather than a distribution or conspiracy conviction, there are no proceeds. The drugs which were the basis of the conviction were not sold. Under the plain language of the statute, there can be no forfeiture because there were no proceeds nor was the property used in the commission of the offense.

Additionally, there is no evidence as to how the jewelry was obtained, when, or by whom. Thus the Court has no evidence whether any of the property was a gift. There is also no evidence as to how much the jewelry is worth, including whether it is genuine or phony. Furthermore, the Court does have evidence that Mr. Mitchell was gainfully employed for two-and-a-half years

---

[1] The statute also allows for forfeiture of property of a defendant engaged in a continuing criminal enterprise, which is not relevant to the present case.

7

prior to his arrest. PSR ¶ 98. Thus, the rebuttable presumption of forfeiture at 21 U.S.C. § 853(d) fails on both grounds because there is no evidence that the property was acquired during the period of the violation in this case and there is evidence of a likely source for such property.

This case is similar to *United States v. Juluke*. In *Juluke*, the Fifth Circuit held that it was error to forfeit jewelry where the statutory requirements were not met. That holding applies equally here. Forfeiture was unwarranted "[b]ecause the Government provided no evidence from which the district court could infer that the jewelry seized from the Julukes' homes was proceeds of the drug activity that formed the basis for Juluke's convictions." *Juluke*, supra at 328. Just as in *Juluke*, there is no lawful basis for forfeiture of the jewelry at issue here.

## VI.   Conclusion

Dane Mitchell agrees that he committed a serious crime which deserves a serious sentence. For the reasons argued above, 84 months incarceration and three years supervised release is a serious offense for this defendant and this case. More importantly, it is certainly one that is "sufficient, but not greater than necessary" to achieve the goals of sentencing.

Respectfully submitted,
DANE MITCHELL
by his attorney

*Joshua Hanye*
Joshua Hanye, BBO#661686
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

## Certificate of Service

    I, Joshua R. Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: <u>February 29, 2024</u>　　　　　　　　*/s/ Joshua R. Hanye*
　　　　　　　　　　　　　　　　　　　　　Joshua R. Hanye